FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

[date stamp illegible] 5:00

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR407-154 |
| | ) | |
| JOHN W. BEMBRY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

John W. Bembry, who is charged with Social Security fraud, aggravated identity theft, and possession of counterfeited securities, has filed a motion to suppress evidence recovered from the hotel room where he was residing when he was arrested. Doc. 50. The Court held an evidentiary hearing on this matter on October 12, 2007, with the government offering the testimony of Detective Raymond J. Woodberry of the Savannah-Chatham Metropolitan Police Department (SCMPD), and the defendant offering the testimony of Betsy Buchholz, who was on duty as an assistant manager at the hotel where Bembry was arrested.

Bembry did not testify. For the following reasons, Bembry's motion to suppress should be **DENIED**.

I. **FACTUAL FINDINGS**

On March 1, 2007, a store clerk at a Savannah pharmacy reported a forgery in progress to the SCMPD, alleging that three women were attempting to use a forged check to purchase a gift card.[1] An officer was dispatched to the pharmacy immediately, arriving in time to identify the three women on the premises. One of the women, Jalana Hudson, spotted the officer and attempted to flee. But the officer caught up to her and found in her hand a fake driver's license and a computer-generated check bearing the same name as the fake license. The officer arrested all three women.

The following day, March 2, Det. Woodberry interviewed Hudson at the Chatham County Jail. Hudson identified defendant Bembry as the source of the fake driver's license and counterfeit check. According to Hudson, Bembry had recruited her to

---

[1] The facts are drawn from the testimony at the suppression hearing and the exhibits, which include the affidavit Det. Woodberry offered in support of his application for a state search warrant. Gov. ex. 2.

participate in his forgery operation, which involved his manufacturing fake identification documents and computer-generated checks that Hudson and other participants would use to buy gift cards at local retail stores. In exchange for their efforts, Bembry would share the gift cards with his accomplices.

Hudson not only described how Bembry's counterfeiting enterprise operated, she also disclosed his whereabouts. Hudson told Det. Woodberry that Bembry was residing in Room 242 at the Savannah Suites hotel, located at 60 West Montgomery Cross Road in Savannah. Hudson further disclosed that Bembry's hotel room served as a rendezvous point where she and Bembry would exchange gift cards and counterfeited documents.

After concluding his interview with Hudson, Det. Woodberry decided to check Bembry's criminal background by entering his name into a police database. The database search revealed that on January 25, 2006, a Twiggs County probate court judge had signed a warrant for Bembry's arrest after Bembry failed to appear in court to answer misdemeanor traffic charges.

3

The following morning, March 3, Det. Woodberry led a team of five SCMPD detectives to the Savannah Suites hotel to arrest Bembry on the Twiggs County arrest warrant. Upon arriving at the hotel, Det. Woodberry identified himself to the front desk clerk and requested verification that Room 242 was registered to Bembry. The clerk complied by presenting a copy of Bembry's registration, which confirmed that he was residing in Room 242 and also indicated that his car was on the premises. The detectives then proceeded to Room 242, where they began knocking on Bembry's door.

At first, Bembry refused to open the door. Det. Woodberry decided to seek out a hotel manager to secure a door key for Bembry's room. Woodberry could not recall exactly what happened next. Although he remembered locating a manager to open the door, he could not recall whether that manager actually unlocked the door or if Bembry had opened the door on his own while he was away looking for a manager. In any event, after the door was opened, the detectives arrested Bembry on the failure to appear

warrant and placed him on the bed in handcuffs.[2] According to Woodberry's arrest report, Bembry was arrested at 9:30 a.m. Gov. ex. 1.

---

[2] The Court is confronted with conflicting testimony as to the nature and sequence of the events at the hotel. Det. Woodberry testified that although a hotel manager may have unlocked the door to Room 242, he was reasonably certain that the defendant opened the door himself while Woodberry was looking for the manager. Ms. Buchholz testified that she at first refused the detective's request to open the door because he had no warrant and hotel policy forbids employees from unlocking guest room doors for law enforcement officers unless they have a warrant with them. Buchholz stated that after her refusal, some detective left the hotel premises "at least for an hour or two" and returned with a warrant, which prompted her to unlock Bembry's door.

While the Court acknowledges Buchholz's sincere efforts to recall the events on March 6, 2006, it cannot credit her testimony to the derogation of Woodberry's. There are four reasons why. First, Buchholz's testimony reflects that she does not remember the specific sequence of events leading to Bembry's arrest. For instance, Buchholz started her testimony by admitting that she "vaguely" recalled the detectives' actions at the hotel. And she admitted that just thirty minutes before the suppression hearing began, she had told the Assistant United States Attorney that she remembered Bembry as being a white male. He is African-American. Second, Buchholz testified she did not document the incident, thereby failing to preserve any fresh memories. She also testified that during her two years of employment at the Savannah Suites hotel, the police have searched rooms at the hotel almost every week. That means the police have executed nearly 100 search warrants at the hotel during Buchholz's time there. Without individualized documentation, the sheer volume of police activity on the premises probably impeded her ability to recall the specific occurrences in this case. Third, she testified that she did not allow the police to view the registration form for Bembry's hotel room, yet the police somehow copied that form and the government has entered it into evidence. Gov. ex. 5. Finally, Buchholz's testimony that Bembry was not arrested until after she unlocked the door to Room 242 upon being shown a warrant is undermined by the circumstances and timeframe of Bembry's arrest. According to Buchholz, the detectives' attempts to arrest Bembry started between 8:00 and 8:30 a.m. Buchholz testified that after she declined to open the door until presented with a warrant, some detectives left the premises and were gone "at least an hour or

5

While placing Bembry under arrest, the detectives saw in plain view many instruments of forgery and counterfeiting. According to Det. Woodberry, the room looked like a "factory for manufacturing checks." The items visible in the room included a computer, a laser printer, blank check stock, blank social security cards, and blank driver's licenses.

Woodberry left the hotel to return to his office and prepare a warrant application to search the hotel room. In the affidavit supporting the application, Woodberry recounted the information about Bembry's counterfeiting activities that he had obtained from

two before they came back with a warrant." She did not recall if the detectives returned with a search warrant or an arrest warrant, and she did not copy it. But she testified that the warrant prompted her to unlock the door, thus allowing the detectives to enter the room and arrest Bembry. There is no evidence that the detectives sought an *arrest* warrant; they had already verified the validity of the Twiggs County warrant. Instead, Det. Woodberry left the premises for two hours while he prepared and obtained a *search* warrant. The affidavit supporting the warrant application, however, indicates that the detectives had already arrested Bembry and viewed some instruments of the crime inside of his room before the search warrant was issued. Gov. ex. 2. Further, Woodberry's field arrest report states that the detectives arrested Bembry at 9:30 a.m., a time that seems too early under Buchholz's version of the facts. Therefore, Buchholz's assertion that Bembry was not arrested until after the police showed her a warrant conflicts with the other evidence that this Court finds credible. (Even if the Court were to assume that the detectives left the premises to obtain either an arrest warrant or a copy of the Twiggs County warrant, no benefit would accrue to Bembry. His principal argument is that the officers never showed him an arrest warrant, an argument that would be undermined if Buchholz had viewed an arrest warrant at the hotel.)

6

Jalana Hudson the day before and also stated that during Bembry's arrest that morning he had seen "in his room in plain view . . . a computer and laser printer as well as other items that may be linked to Identity Fraud and the manufacture of counterfeit checks." Gov. ex. 2. An admitted "slow typer," Woodberry did not complete the warrant application until almost noon on March 3, 2006. After reviewing the affidavit, a state court judge signed a warrant authorizing the search of Bembry's hotel room and automobile at 12:10 p.m. Gov. ex. 2.

Woodberry then returned to the hotel and began searching Bembry's room. The search lasted at least two hours, with the detectives seizing thirty-seven items, including a computer, a laser printer, blank check stock, blank social security cards, a laminating machine, a yellow folder containing bank routing numbers, and a three ring binder containing driver's license samples. Gov. ex. 3. After the search, Woodberry completed a return of service form, which he submitted to the state court on March 8, five days after the search. Id. The return of service form states that Woodberry

executed the search warrant at 12:00 p.m. on March 3, 2006 and that Bembry was given a copy of warrant. Gov. ex. 3.

## II. ANALYSIS

Bembry makes five arguments in support of his contention that evidence seized from the hotel room should be suppressed: (1) his arrest was unreasonable because the officers failed to present him with a valid copy of the Twiggs County arrest warrant when placing him in custody; (2) his arrest for failure to appear in Twiggs County was mere pretext to search his hotel room for evidence of counterfeiting; (3) his hotel room was searched by the police before they obtained a search warrant; (4) probable cause to search his room was not present when the state magistrate judge signed the search warrant authorizing the search of his room; and (5) there were no exigent circumstances justifying seizure of evidence from his hotel room. There is no merit to any of these arguments.

### A. Failure to Present Bembry with a Copy of the Twiggs County Arrest Warrant

Bembry does not contest the validity of the Twiggs County arrest warrant. Instead, he argues that the detectives' alleged

8

failure to present a copy of that warrant when they arrested him violated the Fourth Amendment's prohibition of unreasonable seizures. Doc. 50, at 3–4. Bembry therefore concludes that the evidence seized from his hotel room should be suppressed as the fruit of an illegal search.

Bembry points to two authorities in support of his argument. He first cites Georgia case law, which supports his argument that a Georgia law enforcement officer must have a valid arrest warrant in his possession when arresting a suspect for a misdemeanor violation. See, e.g., Croker v. State, 151 S.E.2d 846 (Ga. Ct. App. 1966). Were Bembry raising this issue in a Georgia state court, his argument might be persuasive. However, even if this Court assumes that the detectives did not show Bembry a copy of the Twiggs County arrest warrant, "the admissibility in federal court of the products of state searches and seizures is controlled by federal law." United States v. Clay, 355 F.3d 1281, 1283 (11th Cir. 2004); see Elkins v. United States, 364 U.S. 206, 224 (1960); United States v. Mastrangelo, 733 F.2d 793, 799 (11th Cir. 1984). "The exclusionary rule was created to discourage violations of the Fourth

Amendment, not violations of state law." United States v. Walker, 960 F.2d 409, 415 (5th Cir. 1992). Thus, even if a Georgia state court would suppress the evidence found in the hotel room, it does not automatically follow that a federal court must do likewise. In fact, there is no federal requirement that an arresting officer have a warrant in hand. United States v. Leftwich, 461 F.2d 586, 592 (3d Cir. 1972); Gill v. United States, 421 F.2d 1353, 1355 (5th Cir. 1970); Bartlett v. United States, 232 F.2d 135, 138 (5th Cir. 1956).

The Court notes that an occupied hotel room receives the same Fourth Amendment protections as a home. United States v. Forker, 928 F.2d 365, 370 (11th Cir. 1991); United States v. Newbern, 731 F.2d 744, 748 (11th Cir. 1984). Nevertheless, it is well settled that an arrest warrant founded on probable cause carries with it the authority to enter the dwelling where the suspect resides in order to effect his arrest. Payton v. New York, 445 U.S. 573, 603 (1980). It does not matter whether the warrant was issued upon felony or misdemeanor charges. Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 688 (6th Cir. 2006); United States v. Lloyd, 396 F.3d 948, 952 (8th Cir. 2005).

The Eleventh Circuit has held that Payton requires a two-part inquiry to determine if entry pursuant to an arrest warrant complies with the strictures of the Fourth Amendment. United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000); United States v. Magluta, 44 F.3d 1530, 1533 (1995). First, the police must have a reasonable belief that the location to be searched is the suspect's dwelling; second, the police must have reason to believe the suspect is within the dwelling. Magluta, 44 F.3d at 1533. The court must look to the totality of the circumstances in assessing the reasonableness of the officers' belief. Id. at 1533.

Both prongs of that test are satisfied here. Regardless of whether Bembry or a hotel manager opened the door to Room 242, Det. Woodberry had learned from Jalana Hudson that Bembry was residing in Room 242 and that he was expecting Hudson to come by with fraudulently obtained gift cards. Further, Woodberry had learned from the front desk attendant that Room 242 was registered to Bembry and that Bembry's car was located on the hotel premises. That information was enough to create a reasonable belief that Bembry resided in Room 242 and was

present when the detectives arrived to arrest him on the Twiggs County warrant.

Bembry next contends that Rule 4 of the Federal Rules of Criminal Procedure supports his argument that the detectives could not arrest him without presenting a valid copy of the arrest warrant. That rule, however, offers no support for Bembry's argument for two reasons. First, state law enforcement officials are not subject to the provisions of Rule 4, which governs *federal* arrest warrant procedures. And even if the rule applied, it would offer no assistance to Bembry. The text of the rule provides, "If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, *at the defendant's request*, must show the warrant to the defendant as soon as possible." Fed. R. Crim. P. 4(a)(3)(emphasis added). Although Bembry states in his brief that he asked to see the arrest warrant, there is absolutely no evidence in the record supporting that assertion. Bembry elected not to testify at the suppression hearing, and neither of the witnesses called by the parties testified that Bembry ever asked to see the warrant. Thus,

the arresting officers did not violate any right guaranteed to Bembry under federal law when they failed to furnish him a copy of the Twiggs County arrest warrant immediately upon placing him in custody.

### B. Arrest on Twiggs County Warrant as Pretext for Investigation in Counterfeiting

Bembry next argues that his arrest on the Twiggs County warrant was merely a pretext to gain entry into his hotel room. According to Bembry, SCMPD detectives had considered him a person of interest in a counterfeiting investigation since October 2005. Because they wanted more evidence against him, the detectives used the Twiggs County arrest warrant as a pretext to search his room for evidence of counterfeiting. Doc. 50 at 8. Once again, Bembry cites Georgia case law to support his argument. And once again, his argument lacks merit.

First, Bembry cites no evidence indicating that Det. Woodberry knew that Bembry was involved in illegal counterfeiting until Jalana Hudson told Woodberry as much on March 2, 2006. Second, and more importantly, Woodberry's subjective intentions play no part in an ordinary Fourth Amendment analysis. United

States v. Jones, 377 F.3d 1313, 1314 (11th Cir. 2004) (citing Whren v. United States, 517 U.S. 806, 813 (1996)). "Instead, an arrest will be upheld if the objective circumstances justify the arrest." Id. (officer acted properly in arresting defendant on outstanding warrant for failure to pay child support even though he hoped to catch defendant with drugs). Here, the warrant for Bembry's arrest was valid, so Woodberry's subjective intentions are simply not pertinent to the Fourth Amendment analysis.

## C. Timing of the Search of Bembry's Hotel Room

Bembry further argues that the detectives searched his hotel room before obtaining a search warrant and then obtained a search warrant after the fact to cover up their warrantless search. To support that argument, Bembry points out that the search warrant was signed on March 3, 2006 at 12:10 p.m., while the return of service form, signed by Woodberry on March 8, indicates that the search warrant was executed at 12:00 p.m. Doc. 50 at 5–6.

When asked about the discrepancy at the suppression hearing, Det. Woodberry responded that he obtained the search warrant before searching the hotel room and that the time

14

discrepancy between the warrant and the return of service form was simply a clerical error on his part. Defects in a return of service form are ministerial in nature and do not invalidate a search. United States v. Diecidue, 603 F.2d 535, 562 (5th Cir. 1979); United States v. Wilson, 451 F.2d 209, 214 (5th Cir. 1971).

The Court credits Det. Woodberry's testimony that he secured a warrant before searching the room and that he simply put the wrong time on the return form. There is no credible evidence indicating that the search occurred before Woodberry obtained the search warrant.

### D. Probable Cause to Issue the Search Warrant

Bembry's fourth argument is that even if the police did not enter his hotel room unlawfully, the search that followed nevertheless was unreasonable because the affidavit submitted by Woodberry did not set forth circumstances upon which a detached magistrate could reasonably determine that Room 242 contained evidence of criminal conduct. Instead of establishing probable cause, Bembry argues that Woodberry's description of the items to be seized was too vague to raise any suspicion of illegal activity, as

it included only objects that were not illegal to possess, such as a computer and a laser printer.

Bembry's contention woefully mischaracterizes the information in Woodberry's affidavit. That affidavit not only recounted Woodberry's March 2, 2006 interview with Jalana Hudson, including Hudson's statement that Room 242 was where Bembry was residing and was a place where she and Bembry exchanged fraudulent documents and fraudulently obtained gift cards, it also stated that Woodberry had verified that Bembry was in fact residing in Room 242 and had seen in plain view a computer, a laser printer, and other items related to identity fraud and the manufacture of counterfeit checks.

While the possession of a computer and a laser printer, without more, may not establish probable cause, the totality of circumstances as presented in Woodberry's affidavit was more that adequate to tie the otherwise legitimate items to Bembry's counterfeiting enterprise.³ United States v. Brundidge, 454 F.3d

---

³ Even if the detective's initial entry into the hotel room had violated the Fourth Amendment and the information acquired from Woodberry's plain view observations needed to be redacted, the affidavit would still contain enough information to support a finding of probable cause for issuance of a

1300, 1352 (11th Cir. 1999) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

### E. Exigent Circumstances

Because the Court finds that no Fourth Amendment violations occurred in the initial entry into Bembry's hotel room or in the warrant-based search that followed, it is not necessary to consider whether exigent circumstances justified seizing the evidence in the hotel room.

## III. CONCLUSION

Bembry's motion to suppress is without merit and should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this _18th_ day of October, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

search warrant. See United States v. Cross, 928 F.2d 1030, 1040 (11th Cir. 1991).