# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| JOHN W. BEMBRY, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) Case No. CV410-037 |
| | ) CR407-154 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

John W. Bembry moves this Court for 28 U.S.C. § 2255 relief. CR407-154, doc. 124. The government opposes. Doc. 128.[1] Bembry was convicted and sentenced to 89 months' imprisonment for: (1) social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B); (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A; and (3) counterfeit securities of private entities, in violation of 18 U.S.C. § 513(a). Doc. 100. Having unsuccessfully appealed, *United States v. Bembry*, 321 F. App'x 892 (11th Cir. 2009) (*Bembry* II), *reh'g en banc denied*, 348 F. App'x 55

---

[1] Bembry moved for an extension of time within which to file a reply brief. Doc. 129. The Court granted it, giving him until August 31, 2010. Doc. 130. Yet, no reply brief has arrived.

(11th Cir. 2009), he has returned to this Court. For the reasons that follow, his § 2255 motion should be **DENIED**.

## I. BACKGROUND

Some background, drawn from *United States v. Bembry*, 2007 WL 3484226 at * 1-3, 5 (S.D. Ga. Nov. 14, 2007) (*Bembry* I) and *Bembry* II, will inform Bembry's claims here. A woman arrested in Savannah, Georgia told police detective Ray Woodberry that Bembry recruited her to purchase gift cards with his counterfeit checks. She also told him about Bembry's location and that his girlfriend had been arrested for using counterfeit checks. Woodberry found Bembry's name in a criminal database, learned of an outstanding arrest warrant against him from another jurisdiction, then sought to arrest him on that warrant.

Woodberry found and arrested Bembry at his hotel room, where a follow-up warrant-based search uncovered identity fraud evidence (blank social security cards and birth certificates, etc.). *Bembry* II, 321 F. App'x at 893-94. But Woodberry did not have the arrest warrant in his physical possession when he arrested Bembry. Also, he did not obtain a search warrant until after the arrest. He later signed the search warrant's Return of Service. That warrant's paperwork, however, misstated its

issuance time due to a clerical error. *Id.* at 894; *see also Bembry* I, 2007 WL 3484226 at * 5. Bembry unsuccessfully moved this Court to suppress the evidence on various grounds, including its time error, the fact that warrant was from another county and that Woodberry did not have it on him at the time of the arrest. *Bembry* I.

On direct appeal Bembry argued that this Court: (1) erred in denying his motion to suppress evidence found in his hotel room; (2) erred in finding that the search warrant was secured prior to the search of his hotel room; (3) erred in upholding his arrest because the arrest warrant, which was based on an unrelated outstanding arrest warrant for Bembry's failure to appear, was a "pretext" that the police used in order to perform an unconstitutional search of his hotel room; (4) erred in finding that there was sufficient probable cause to issue a search warrant for his hotel room; and (5) erred in giving him eight criminal history points at sentencing for three prior convictions. *Bembry* II, 321 F. App'x at 893.

Those claims were denied on the merits. *Id.* at 897. They included Bembry's assertion that because, under *Georgia* law, an arrest warrant must be physically nearby when an officer arrests the subject of the

warrant, Woodberry violated Georgia law by not having a copy of his outstanding arrest warrant when he arrested him, and this entitles him to relief. As this Court and the Eleventh Circuit said, however, federal law requires no warrant in hand or nearby when arresting a suspect. Instead, the arresting officer need only "inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible." Fed. R. Crim. P. 4(c)(3)(A); *Bembry* II, 321 F. App'x at 893.

## II. ANALYSIS

Bembry's § 2255 motion leads off with an ineffective assistance of counsel (IAC) claim and, for the most part, then ends with a simple re-presentation of his appellate issues.[2] In Ground One he complains that his lawyer

---

[2] It is well settled that in addressing a § 2255 collateral attack upon a conviction or sentence, "[a] district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978) ("a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal"); 3 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 595 at 723 n.25 (3d ed. 2004)). Here, Bembry repackages his appellate arguments as ineffectiveness claims, which as a general rule cannot be raised on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Since the

4

failed to properly present meritorious Fourth Amendment Violation claim by 'forcible/fraudulent entry'; (2) object to erroneous jury instructions on Aggr. Id. Theft charges not containing the requisite to convict [sic]; (3) fully and properly argue two impermissible calculation applications for sentence; and, (4) present any of these viable issues on Appeal when the issues he did present had less merit and were even 'frivolous' as the Court indicated. (Counsel meagerly objected at sentencing, but failed to follow through on Appeal at all.[)]

Doc. 124 at 4.

The problem for Bembry, who is proceeding pro se but has been free to file as many briefs as he wants, *Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609, 609 (S.D. Ga. 2003); *Pattee v. Georgia Ports Authority*, 477 F. Supp. 2d 1272, 1274-75 (S.D. Ga. 2007), is that he provides no elaboration, and such conclusory claims not only warrant no evidentiary hearing[3] but also fail as a matter of law.

---

claims are fundamentally different and were unavailable on direct review, they warrant examination.

[3] *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (*citing Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

Courts liberally construe pro se pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Toole v. McDonough*, 2010 WL 1971903 at * 1 (11th Cir. May 18, 2010). But they do *not* raise arguments on behalf of litigants before them. *Blankenship v. Terry*, 2007 WL 4404972 at * 40 (S.D. Ga. Dec. 13, 2007); *United States v. Burkhalter*, 966 F. Supp. 1223, 1225 n. 4 (S.D. Ga. 1997); *see also GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded sua sponte by the trial judge") (internal quotes and cite omitted).

By merely "laundry listing" perceived legal errors, Bembry is impliedly asking the Court to scour the record and *construct*, not just liberally construe, his § 2255 claims. That will not happen. *See, e.g., United States v. Mincey*, 2010 WL 2636022 at * 2 (S.D. Ga. Jun. 29, 2010) (a § 2255 movant "cannot rest on speculation, conclusory assertions, or the mere suggestion that something might have been discovered underneath a newly turned stone.").

Note, for that matter, that it costs Bembry nothing but his time to re-litigate his case via § 2255, and even less to complain that his lawyer's

efforts were "meager." But rather than even make the effort to argue *how* his lawyer's efforts were "meager," i.e., IAC-level deficient,[4] Bembry simply raises the claim in the apparent expectation that the Court will flesh it out for him. Again, it is Bembry who "bears the burden of establishing the need for § 2255 relief, as well as that of showing the need for an evidentiary hearing." *Oung v. United States*, 2010 WL

---

[4] In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). The prejudice prong requires movants to establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

2037379 at * 2 (D. Mass. May 18, 2010); *see also Williams v. Allen*, 598 F.3d 778, 788 (11th Cir. 2010). Ground One thus must be denied on its face.

Ground Two suffers the same problem. In its entirety:

> District Court and Appellate Court failed to address the issue or exigency for officers to come to defendant's premises *and* enter to arrest him. Both Courts failed to address Defendants contentions that officers had no exigent circumstances for coming to this premises to arrest him on an outstanding misdemeanor traffic F.T.A. from an adjacent county without the warrant in possession and fraudulently state that they had a warrant to gain entry to his premises.

Doc. 124 at 4; *see also* doc. 128 at 5 (Bembry raised this at the trial level); doc. 128-1 at 4 (raised in appellate rehearing motion). Generously but imprudently,[5] the *government* cobbles together an argument for Bembry by citing disparate parts of the record. *See* doc. 128 at 11-18 (citing portions of this Court's record plus Bembry's pro se appellate *rehearing*

---

[5] Movants sometimes file successive § 2255 motions, and each time a claim is reached on the merits the re-litigation bar typically tightens. *See, e.g., Bazemore v. United States*, CV496-141, doc. 110 (S.D. Ga. Aug. 15, 2007), reported at 2007 WL 2376299 at * 2-3; *see also id.* doc. 133 (government's opposition to Bazemore's latest motion, recounting a lengthy series of motions and arguing successiveness and other relitigation-bar doctrines); doc. 137 (order denying relief on successiveness grounds). So reaching a claim that a § 2255 movant can later claim he never meant to raise (because his *opponent* raised it for him) is not a sound practice.

8

brief, then "hedgily" noting that, if in fact Bembry is raising a "fraudulent entry" claim here, he is slightly varying it from what he already raised at trial and on appeal, *id.* at 16; Bembry "also *appears* to raise a claim" that the courts "failed to fully consider his argument that there were no exigent circumstances justifying the officers' entry into his hotel room to arrest him." *Id.* at 17 (emphasis added)). Of course, a claim that a court failed to "fully consider" an argument means nothing without explaining what, precisely, the Court overlooked.[6] Again, this Court will not explicitly or tacitly "help along" a movant by stitching together § 2255 claims that he has not raised. And even if it could be viewed as an IAC claim, it fails because Bembry does not even begin to explain how his counsel was deficient,[7] much less how Bembry was prejudiced. Ground Two should also be denied.

---

[6] This Court considered the claim and disposed of it on the merits. Doc. 59 at 17. *Bembry II* does not mention it, but Bembry fails to cite to any portion of the appellate record showing that he raised it *prior* to *Bembry II*'s issuance. As such, the issue is otherwise defaulted.

[7] The *Bembry* II court applied federal law to the arrest warrant's execution; "exigent circumstances" were irrelevant to its analysis, for an officer who does not have the arrest warrant in hand need not face some sort of exigency in order to proceed with the arrest of the subject of that warrant.

The same fatal defect runs through Bembry's "Ground Three": "Erroneous; jury Instruction on Aggravated Identity Theft Charges." Doc. 124 at 4. Here he elaborates: "Jury instruction did not have all elements of the Crime to convict. Defendant was convicted without the requisite [sic] to convict." *Id.* Yet, he does not say *what* elements were required or missing[8] or how he was prejudiced as required by Fed. R. Civ.

---

[8] The Court's jury charge included this section on the identity theft count:

> With respect to counts two and four, Title 18, United States Code, section 1028a, makes it a federal crime or offense for anyone to knowingly use, without lawful authority, a means of identification of another person during and in relation to certain crimes, including a false representation of a social security number in violation of Title 42, United States Code, section 408(a) (7) (B).
>
> The defendant can be found guilty of that offense only if both of the following facts are proved beyond a reasonable doubt: First: that the defendant *knowingly* used, without lawful authority, a means of identification of another person; and second: that the defendant used the means of identification of another person during and in relation to the false representation of a social security number in violation of Title 42, United States Code, section 408(a)(7)(B) .
>
> The term "means of identification" is defined as any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including a social security number.
>
> In order for you to in order for you to find that the defendant acted "during and in relation to" an offense, you must find that the unauthorized use of the means of identification facilitated or played a role in the offense.

Doc. 86 at 8-9 (emphasis added); *see also* doc. 111 (trial transcript, charge omitted).

P. 61. Nor will the Court fill in these blanks for him but will only construe his *pro* se assertions liberally. *Sanders v. United States,* 113 F.3d 184, 187 (11th Cir. 1997). And if Bembry meant "no requisite intent" to convict then that claim is frivolous, as his hotel room's array of identity-fraud accessories supplied all the circumstantial evidence the prosecution needed to prove intent. Finally, the issue was not raised on appeal and thus is procedurally defaulted. "Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).[9] Ground Three therefore should also be denied.

Bembry posits Ground Four as "Misapplication of the Sentencing Guidelines resulting in an impermissible sentencing enhancement." Doc.

---

[9] Any ground that could have been raised on appeal but was not is procedurally defaulted unless Bembry can establish cause and prejudice excusing his default (or establish his actual innocence of the crime). *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). It is well established that "constitutionally '[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted). But Bembry has not shown any deficiency here on his attorney's part, much less any other reason for excusing the default.

124 at 5. He elaborates: "Defendant was enhanced for relevant conduct on the underlying conviction group of Social Security Fraud when these relevant conduct enhancements were barred under the Aggravated [Identity] Theft Statute when convicted of Aggravated Identity Theft." *Id.* Again, the Government generously plies some educated guesses as to what Bembry means here. Doc. 128 at 22 ("Bembry's first argument *apparently* is. . . .") (emphasis added). It then launches into an extended discussion based on its *assumption* that Bembry is rehashing what his trial counsel argued, *id.* at 23, then cites "the only *conceivable* sentencing enhancement that *might* have fallen under" an enhancement exclusion, *id.* (emphasis added), before concluding that Bembry's "claim" fails anyway. *Id.* at 24-25. Once again, the Court will not guess at what a § 2255 movant is actually arguing.[10] This claim, too, thus must be denied.

---

[10] Most likely he is raising an argument similar to that found in *United States v. Taylor*, 2010 WL 1500521 at * 1 (4th Cir. Apr. 15, 2010) (under federal sentencing guidelines, the offense level for defendant's bank fraud convictions should not have been increased for her use of social security numbers, since defendant was given separate sentences for aggravated identity theft), and *United States v. Abulyan*, 2010 WL 2232696 at * 2 (5th Cir. June 3, 2010). But this involves some fairly complicated analysis based on subtle nuances regarding sentencing enhancements under U.S.S.G. § 2B1.1(b)(10), which calls for an enhancement for things like I.D.-theft equipment. An enhancement like that is *sometimes* excluded when a defendant is separately sentenced for aggravated identify theft, *Taylor*, 2010 WL 1500521 at * 1, and when

Ground Five states: "Inappropriate Consecutive Sentencing by misapplication of the Sentencing Guidelines and applicable statutes." Doc. 124 at 5. As supporting facts, Bembry explains that he "was given a consecutive sentencing on the two counts of Agg[ravated Identity] Theft which were part of the same course of conduct, committed at the same time and against the same victim[,] which resulted in an enhanced sentence that is impermissible as applied." *Id.*

Indulging Bembry somewhat, this claim may be reasonably construed as an IAC-based claim -- that his attorney failed to challenge the imposition of consecutive 24-month sentences on both of Bembry's aggravated identity theft convictions, where those offenses involved the same acts and victim. Under the IAC standards, the pivotal issue here is whether no reasonable lawyer would have failed to do what Bembry says his lawyer should have done. *Ford*, 546 F.3d at 1333.

Nevertheless this claim fails. Under

---

enhancements are based on only the "transfer, possession, or use of a means of identification." U.S.S.G. § 2B1.6 cmt. n. 2. No one can be reasonably certain if Bembry is arguing this claim at this level. In any event Bembry, as the Government points out, doc. 128 at 24-25, received a two-level enhancement for *possession* of ID-theft paraphernalia, *see* PSI at 12 ¶ 35, not "transfer, possession, or use of a means of identification." So if that is his claim, it fails in any event.

> U.S.S.G. § 2B1.6, the guideline for aggravated identity theft, the guideline sentence for a conviction under 18 U.S.C. § 1028A is that prescribed by the statute. U.S.S.G. § 2B1.6. Pursuant to 18 U.S.C. § 1028A(a)(1), a defendant convicted under this statute is required to serve a term of two years' imprisonment, which should run consecutively to any term of imprisonment imposed for another offense. 18 U.S.C. § 1028A(a)(1). The commentary to § 2B1.6 provides that, where a defendant has multiple convictions under § 1028A, the district court has discretion to determine whether these sentences should run concurrently with each other. U.S.S.G. § 2B1.6, comment. (n.1(B)). This commentary directs the court to consult the commentary to U.S.S.G. § 5G1.2 for guidance in making this determination. *Id.* Section 5G1.2, in turn, generally addresses sentencing for multiple counts of conviction.

*United States v. Revson*, 2010 WL 1710836 at *4 (11th Cir. Apr. 28, 2010). *Revson* illuminated a list of factors, *id.* at * 5, and one of them includes

> [w]hether the underlying offenses are groupable under § 3D1.2 (Groups of Closely Related Counts). Generally, multiple counts of 18 U.S.C. § 1028A should run *concurrently* with one another in cases in which the underlying offenses are groupable under § 3D1.2.

*Revson*, 2010 WL 1710836 at * 5 (quoting U.S.S.G. § 5G1.2 cmt. n. 2(b)) (emphasis added). Bembry's complaint that he was sentenced *consecutively* for "the same course of conduct" arguably invokes that factor, and thus he seems to argue that his counsel erred by failing to press the argument and, as a result, he should be re-sentenced under this

14

factor and his multiple counts thus "should run concurrently" rather than consecutively.

But Bembry ignores what the prosecutor and probation officer super-illuminated at sentencing -- that his record supports the entirely reasonable conclusion that Bembry, a career fraudster, simply will not cease re-offending. Doc. 111 at 14; Sentencing Recommendation at 2 ("the defendant is unrepentant"). Expressly noting that "attitude" and other adverse factors, the district judge exercised his discretion to impose consecutive sentences. *Id.* at 15; *see also* Court's Statement of Reasons at 1 (adopting PSI without change). Indeed, the judge, who consulted the governing statutes and U.S. Sentencing Guidelines, almost departed upward in no small part because of it.[11] Doc. 111 at 3-7, 15.

---

[11] At sentencing, the judge, having been just reminded by the government of Bembry's "long history of identity theft," doc. 111 at 14, including "five prior convictions and two other arrests that involve counterfeiting," *id.*, paused to note:

> After I read this PSI and read for the first time many of the positions that you took regarding objections, and also observed what I thought was your attitude, I almost sent it back to the probation office and to your counsel and counsel for the government with a notice that the Court was considering a departure upward in your case, and to give you notice prior to sentence of the Court's thinking. On reflection, I decided not to do that. But I can tell you that it would not have been hard for me to have departed upward in this case.

*Id.* at 15.

That fact alone would support consecutive sentencing. Bembry has failed to show how competent counsel would have obtained a different result, much less that no other counsel would have done what his lawyer did. This last claim, then, must also be denied.

### III. CONCLUSION

John W. Bembry's 28 U.S.C. § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  25th  day of October, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA